UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JOHN R.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No.: 1:19-cv-00857-MK <br><br> OPINION AND ORDER |

**KASUBHAI, Magistrate Judge:**

Plaintiff John R. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits under the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 5.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

For the reasons discussed below, the Court reverses and remands this case for the immediate calculation and award of benefits.

## BACKGROUND

Plaintiff protectively filed an application for Disability Insurance Benefits on April 7, 2016, alleging disability beginning February 4, 2015. Tr. 22.  Plaintiff's claims were denied initially and upon reconsideration. Tr.22.  Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") David J. DeLaittre on May 2, 2018. Tr. 22, 56.  The ALJ denied Plaintiff's application in a written decision dated December 29, 2017. Tr. 22-35.  Plaintiff sought review from the Appeals Council.  The Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-4.  Plaintiff now seeks judicial review of the decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. *Id.* If the claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(ii). The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.* At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.* At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

**FINDINGS OF THE ALJ**

In the present case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 4, 2015. Tr. 24. At step two, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia; psoriatic arthritis; osteoarthritis; depression[.]" Tr. 24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment in the Listings. Tr. 26.

Prior to step four, the ALJ determined that Plaintiff retained the RFC that allowed him to perform light work "except he could stand/walk 8 hours in an 8-hour day; he is limited to 1-3 step, simple tasks; and he is limited to no intense interpersonal relationships and limited contact with the public." Tr. 27.

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a Traffic Control/Flagger." Tr. 35. The ALJ concluded that Plaintiff was not disabled. *Id.*

**DISCUSSION**

Plaintiff challenges the ALJ's findings on four grounds: (1) the ALJ improperly rejected Plaintiff's subjective complaints, (2) the ALJ improperly rejected medical source and other opinions, (3) the ALJ failed to include Plaintiff's medically documented limitations in the RFC assessment, and (4) the ALJ failed to reconcile the vocational expert's testimony with the Dictionary of Occupational Titles ("DOT"). Pl.'s Br. 7-18, ECF No. 15. The Court first addresses the second issue concerning medical opinions.

**I. Medical Opinions**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

Cir. 2008). Specific and legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). "[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Plaintiff's treating rheumatologist Dr. McCord treated Plaintiff for osteoarthritis and fibromyalgia. Tr. 276. Dr. McCord diagnosed Plaintiff with fibromyalgia in 2014, noting fibromyalgia as the "primary encounter diagnosis[.]" Tr. 432; *see* Tr. 281 (On November 19, 2014, Roger Cummins, PA, noted that Plaintiff was referred to him because Plaintiff "was recently diagnosed with fibromyalgia[.]"). On May 6, 2014, Dr. McCord noted:

> ONSET of neck pains and low back pains incl[uding] betw[een] shoulder blades, easily stressed around 2005. … Fingers bother him but no sausage swelling. Fingers are stiff but not swollen. Less grip strength. Work is physical (pipe fitter) and before that heavy construction. Low bazck [sic] is probably the worst, followed by neck then hands. Has slight trigger finger of his L [left] index with slight swell L [left] middle PIP [proximal interphalangeal] – no sausaging. [sic]

Tr. 430. Dr. McCord referred Plaintiff to Roger Cummins, PA for arthritis and sleep disorders. Tr. 432.

In February 2015, Dr. McCord noted that Plaintiff:

> IS UNABLE TO DO HIS PRESENT PHYSICAL WORK HAVING TO DO WITH PROLONGED STANDING BEYOND ½ HOUR OR REPETIVIE USE OF HANDS OR PROLONGED SITTING BEYOND 2 HOURS. FATIGUE IS ALSO AN ISSUE AND HE'S NOT RESPONDING TO MEDS THAT TEND TO SEDATE HIM.
>
> …WORST AREAS ARE NECK AND LOWER BACK – "HIPS" AND FEET ARE MORE A REFLECTION OF FIBRO[MYALGIA]. HANDS HURT WITH REPETITIVE MVT [MOVEMENT].

Tr. 424 (capitalized in the original).

In March 2015, Dr. McCord's treatment notes for Plaintiff read:

> UNABLE TO CONTINUE HIS WORK AS APPRENTICE PIPE FITTER – WORST AREAS ARE NECK, BACK AND KNEES – EVEN WHEN NOT WORKING HIS PAIN LEVEL IS 8/10 – ALL THIS DESPITE OXYCONTIN … & ULTRAM & CYMBALTA ETC. I WOULD CONSIDER HIM PERMANENTLY DISABLED FOR HIS PRESENT WORK – FORMS FILLED OUT.

Tr. 421 (capitalized in the original).

Dr. McCord opined that Plaintiff "can no longer perform work as a pipe fitter apprentice. It is too physically demanding for him, and this condition is permanent." Tr. 276. The ALJ agreed with Dr. McCord that Plaintiff is not capable of working as a pipe fitter and is limited to lifting and carrying at the light level. Tr. 33. However, the ALJ gave little weight to the remainder of Dr. McCord's opinions,[2] stating:

> [B]ecause they are not consistent with the record as a whole. For example, while [Dr. McCord] opined that the claimant has a rather limited ability to stand and walk, physical exams … have routinely showed normal gait, station, coordination, and joint/spinal range of motion, as well as no muscular atrophy.

Tr. 33.

The Ninth Circuit has recognized that fibromyalgia is "poorly-understood within much of the medical community" and "[t]he disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). The Ninth Circuit found that it is error to require objective evidence for "a disease that eludes such measurement." *Id.* at 594. Where an ALJ relies on his disbelief of Plaintiff's symptom testimony and requires objective evidence to justify a rheumatologist's conclusion of disability from fibromyalgia, the Ninth Circuit held that it does not meet the substantial evidence standard to reject the medical opinion. *Id.* Fibromyalgia "causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke*, 379 F.3d at 589-90 (citing *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc.,* 125 F.3d 794, 796 (9th Cir.1997); *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n. 1 (8th Cir.2003)). Common symptoms include chronic pain throughout the body, multiple tender points, fatigue,

---

[2] The ALJ mistakenly referenced a "February 2015 form" (Ex. 1F/2) as one completed by Dr. McCord. Tr. 33. Exhibit 1F/2 was in fact completed by Roger Cummins, PA. Tr. 277. Nevertheless, Dr. McCord's chart notes in February 2015 and March 2015 reflect similar opinions as those of Mr. Cummins. *See* Tr. 421, 424, 277, 33.

7 – OPINION AND ORDER

stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. *Id.*

As shown by the treatment notes referenced above, Plaintiff suffered common symptoms of fibromyalgia: chronic pain throughout the body, multiple trigger points, fatigue, stiffness and sleep disorder. *See id*. Treatment notes also reflect that Plaintiff's average pain level remained high even with medication: 8/10 in January 2015, 5-7/10 in February 2015, 8/10 in March 2015, 7/10 in June 2015, 5/10 in October 2015, and 5-7/10 in January 2016. Tr. 427, 424, 421, 409, 396, 392. On March 10, 2015, Mr. Cummins documented that Plaintiff was "sleeping better but his fibromyalgia pain [wa]s the same." Tr. 278. On November 19, 2015, Plaintiff had "[m]ultiple trigger pts [points] consistent with his fibromyalgia[.] Bi-lat[eral] shoulder and A.C. joint pain and crepitus, increasing shoulder pain and muscle tension. Bi-lat[eral] hand and wrist joint pain/swelling/crepitus." Tr. 327. Naturopath Laura Blevins, ND, noted in March 2016 that Plaintiff had constant joint pain and there was no change since the last visit. Tr. 442.

The ALJ rejected the remainder of Dr. McCord's opinions, relying on physical exam findings indicating normal gait, station, coordination, and joint and spinal range of motion, as well as muscular atrophy during routine physical exams. Tr. 33. However, the ALJ failed to explain how these physical exam findings detract from Plaintiff's disability associated with fibromyalgia. The ALJ mistakenly required objective evidence to substantiate Dr. McCord's opinion. The Court finds that the ALJ erred in requiring objective evidence for Plaintiff's fibromyalgia. The Court further finds that the treatment notes from various providers support and are consistent with Dr. McCord's opinions. When the Commissioner fails to provide legally sufficient reasons to reject Dr. McCord's opinion, the Court credits Dr. McCord's opinion as true. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Where the Commissioner fails to

provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Ninth Circuit] credits that opinion 'as a matter of law.'").

The ALJ also discredited naturopath Ms. Blevins' opinions because "they are not consistent with the record as a whole" and that Ms. Blevins is not an acceptable medical source. Tr. 34.  Ms. Blevins in a Physical Medical Source Statement opined that pain, fatigue, anxiety and depression prevent Plaintiff from gainful employment. Tr. 592.  She noted that Plaintiff's pain or other symptoms were constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. Tr. 593.  Ms. Blevins further opined that Plaintiff could sit, stand or walk for about 4 hours in an 8-hour day and he would need to shift positions every 15-20 minutes. Tr. 593.  According to Ms. Blevins, Plaintiff should have his legs elevated for over 4 hours in an 8-hour day even in a sedentary job. Tr. 593.  Ms. Blevins noted that Plaintiff can occasionally lift and carry 10 pounds and can rarely lift and carry 20 pounds. Tr. 593.

The ALJ did not consider Roger Cummins, PA's opinion. *See* Tr. 31, 33-34.  In the Physician's Statement of Disability, Mr. Cummins stated that Plaintiff was unable to lift more than 25 pounds, do repetitive activities, stand more than 15-20 minutes, sit more than 15-20 minutes, or walk more than 20 minutes. Tr. 277.  Mr. Cummins stated that Plaintiff must frequently change positions to alleviate his symptoms. Tr. 277.  Both Ms. Blevins' and Mr. Cummins' opinions are consistent with Dr. McCord's opinion.

## II. Subjective Complaints

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion that the claimant is not credible is insufficient. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Id.* The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[3] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 29. However, the ALJ rejected Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of his symptoms because they are inconsistent with the record as a whole. Tr. 29. Plaintiff contends that the

---

[3] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

10 – OPINION AND ORDER

following four reasons provided by the ALJ are not clear and convincing to reject his subjective testimony. Pl.'s Br. 7, ECF No. 15.

### A. Reasons Plaintiff Left His Last Job

The ALJ noted that Plaintiff's testimony as to the circumstances in which he left his last job "suggested that he may have been able to keep doing that job … after the alleged onset date." Tr. 29.  The ALJ provided the following explanation for his conclusion:

> While [Plaintiff] testified that he left this job because he could not do it anymore, he did not describe any dissatisfaction on his employer's part with his work performance. He did not testify as to being let go due to performance issues. Rather, he testified that his coworkers made fun of him for grunting a lot, which he did because he was hurting.  He testified that one of his coworkers pulled him aside and asked him if he wanted to do that work until he retired. He testified that he quit that day.

Tr. 29.

An ALJ may find the claimant's subjective complaints not credible if the claimant left a job for reasons unrelated to the impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming the ALJ's finding that the claimant's subjective complaints not credible for the reason that, among other factors, the claimant left his job because he was laid off, rather than because he was injured).  Here, Plaintiff was an apprentice pipefitter in his last job. Tr. 68.  At the hearing, Plaintiff testified about the circumstances of his last job:

> I was so sick at that time, that [one nice coworker] would take me with him because the other guys didn't work with me because I was in such bad shape, I couldn't keep up with them.
>
> …
>
> … I was just so sick, and one of my associates --- actually the one nice guy I worked with because a lot of guys were giving me a hard time all the time.  They were making fun of me because I grunt a lot.  They asked me why I grunted, and I was like, well, I'm hurting.

11 – OPINION AND ORDER

> At any rate, he finally came up to me one day and says do you really think you want to be doing this until you retire … I was up in a man lift, and I was in tears, like --- and that's the day I quit.

Tr. 68.

Reading Plaintiff's testimony in context, his testimony was that his coworkers, except one, did not want to work with him because he could not keep up with them. The ALJ's suggestion that there was no testimony of performance issues due to Plaintiff's disabling condition is unfounded.

### B. Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). When considering the factor of daily activities, the Ninth Circuit has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, and only if the level of activity is inconsistent with the claimant's claimed limitations would these activities have any bearing on the claimant's credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")).

Here, the ALJ found that Plaintiff's activities of daily living do not appear to be nearly as limited as he has alleged. Tr. 29. The ALJ listed the following examples. Plaintiff admitted that he had injured his ankle while working on an old generator. Tr. 30. Plaintiff testified that he rolled his ankle while running away from the generator that became engulfed in flames. Tr. 30. Plaintiff also testified that he had been working on converting an old school bus to a motor home and had already gotten some of the benches out of the bus. Tr. 30. Additionally, Plaintiff reported doing quite a bit of work on a fence in June 2015. Tr. 30, 338. Plaintiff reported building speakers as a hobby in May 2016. Tr. 30, 648. In July 2017, Plaintiff reported that he always tried to live healthy and be active. Tr. 30, 1098. In April 2018, Plaintiff again reported that he enjoyed building speakers, as well as woodworking. Tr. 30, 1161.

As to Plaintiff's work on the generator, Plaintiff testified that he was working on a little generator on the driveway. Tr. 82. The generator caught fire when he was trying to get it running. Tr. 82. Plaintiff pulled the generator away from the bus and the house. Tr. 81. Plaintiff rolled his ankle when he ran. Tr. 81. The ALJ did not ask specific questions such as how much time Plaintiff spent in working on the generator, how frequently he worked on it, whether he took breaks and how often he took breaks, and how far Plaintiff was able to run from the fire.

Regarding Plaintiff's activity in converting the school bus, Plaintiff testified that he tried to convert the school bus to a motorhome because he lost his house and he was starting all over. Tr. 83. Plaintiff testified that it had been a year since he started the conversion. Tr. 82. He testified: "I haven't had much luck yet. I've only gotten some of the benches out so far[.]" Tr. 82. The ALJ asked: "How's the motorhome now?" Tr. 83. Plaintiff answered: "It ain't [sic] no motorhome yet. ... It's a mess." Tr. 83. When Plaintiff offered to show pictures of the school bus, the ALJ declined. Tr. 83.

13 – OPINION AND ORDER

While these examples show that Plaintiff was able to perform certain physical activities, nothing in Plaintiff's testimony or the record shows that his level of activities is inconsistent with his limitations.  Plaintiff made very little progress in a one-year period on the school bus project.  It is also natural and not surprising for Plaintiff to run to escape a life-threatening fire despite his limitations.  Regarding Plaintiff's report of "doing quite a bit of work on a fence," "building speakers," and enjoying woodworking, the record includes no details as to how much or how frequently Plaintiff engaged in these activities.  Nor did the ALJ inquire about the details at the hearing.  Plaintiff testified he puts his feet up about every hour, and he has good days and bad days.  Tr. 78-79.  It is possible that Plaintiff engaged in these activities on some of his good days with frequent rests.  Because the ALJ failed to develop the record to substantiate his conclusion, the ALJ erred in rejecting Plaintiff's subjective testimony as to his activities of daily life.

### C. Caring Responsibilities

Plaintiff testified that he lives with his 87-year old mother and he has to take his mother grocery shopping. Tr. 30, 60, 78.  The ALJ concluded that "it appears likely that [Plaintiff] is active in taking care of chores and other household tasks (i.e., it appears unlikely that his mother is the one who is predominantly keeping up the home, preparing meals, etc., as [Plaintiff] described his wife doing in his function report)." Tr. 30.

Plaintiff testified:

> [O]n a good day when I have to take my mom shopping, god bless her, she'll be 88. I might make an hour in the store. A lot of times I'll just let her shop on her own, and I'll sit on a bench if it's too much, and I'll wait for her.

Tr. 78.  The ALJ did not probe further by asking, for example, whether Plaintiff takes care of chores and other household tasks or what Plaintiff does for his mother other than taking her grocery shopping. *See* Tr. 78.  The ALJ drew an unfounded conclusion based solely on the age of

Plaintiff's mother, the fact that Plaintiff lives with her and that Plaintiff takes his mother grocery shopping on a good day. Tr. 30.  Without asking Plaintiff any questions concerning the specific facts, the ALJ failed to develop a record with specific details about Plaintiff's responsibilities in caring for his mother.  The ALJ's rejection of Plaintiff's subjective complaints based on speculative parent-caring responsibilities does not constitute substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that the ALJ erred by failing to provide specific details about claimant's childcare responsibilities in rejecting the treating physician opinion).

### D. Inconsistent Record as a Whole

Plaintiff testified that he has widespread pain throughout his entire body. Tr. 69.  The pain is constant. Tr. 69.  Plaintiff rated his day-to-day pain at 7-8 on a scale of 1-10. Tr. 70.  His feet have been permanently damaged since a trauma episode in 2016. Tr. 61-62.  The swelling is still there. Tr. 75.  He suffers from psoriatic arthritis. Tr. 67.  Plaintiff also suffers from fatigue. Tr. 72.  He takes a break about every hour from doing regular household chores due to fatigue. Tr. 72.  If he overdoes things, he is down for days. Tr. 72.  Dr McCord prescribed tizanidine, diazepam, baclofen, and diclofenac. Tr. 67.  Plaintiff cannot walk if he does not take the prescription medications. Tr. 67.  Furthermore, Plaintiff testified that he can sit for 10-15 minutes before he has to get up and move around. Tr. 78.  He can stand for about 15-20 minutes at a time. Tr. 78.  He can walk maybe one hour on a good day, and he can do grocery shopping and takes his mother grocery shopping on those days. Tr. 78-79.  Plaintiff can lift and carry about 25 pounds before it gets too heavy for him. Tr. 79.  Plaintiff has maybe five good days a month where he can be up and active for about four hours. Tr. 79-81.  He puts his legs up half the day because otherwise the swelling worsens. Tr. 72-74.

The ALJ concluded that the medical record as a whole is not consistent with Plaintiff's subjective testimony. Tr. 30-31. The ALJ first found that treatment notes from rheumatologist Dr. McCord, naturopath Ms. Blevins, and other providers "do not indicate issues that would prevent Plaintiff from performing light work." Tr. 30. The ALJ listed the following examples. Plaintiff "has almost always appeared on examination in no acute distress"; he routinely showed normal gait station, coordination, and joint spinal range of motion, as well as no muscular atrophy; physical exams showed no edema in the extremities other than when Plaintiff had a flare-up of gout; and Dr. McCord noted that Plaintiff's pain "seem[ed] out of proportion to any physical findings." Tr. 30-31.

The ALJ's reasoning in rejecting Plaintiff's subjective testimony does not comport with the Ninth Circuit's finding that fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. As discussed above, the Court finds that the treatment notes from various providers are consistent with Dr. McCord's opinion. Plaintiff's subjective complaints are also consistent with these providers' opinions and the documented symptoms in the record. The Court finds that the ALJ erred in discrediting Plaintiff's subjective complaints.

In sum, the ALJ improperly rejected Plaintiff's subjective testimony. "[W]here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.' Rather, that testimony is … credited as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Here, Plaintiff would be disabled if his testimony were credited. The Court therefore credits Plaintiff's testimony as a matter of law.

**III. RFC Formulation**

An ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The Court must uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ found that Plaintiff "would be able to stand/walk for a full 8 hours in an 8-hour day[,]" relying on the same reason he used to reject Dr. McCord's opinion and Plaintiff's subjective testimony: "routinely normal findings as to gait, station, coordination, joint/spinal range of motion, and no muscular atrophy." Tr. 31. The ALJ determined that Plaintiff is able to perform work limited to 1-3 steps, simple tasks that involves no intense interpersonal relationships and limited contact with the public. Tr. 31. The ALJ then concluded that Plaintiff "is capable of performing past relevant work as a Traffic Controller/Flagger." Tr. 35.

However, the ALJ's finding that Plaintiff is able to "stand/walk for a full 8 hours in an 8-hour day" is not supported by the substantial evidence in the record. For example, Dr. McCord noted that Plaintiff was not able to stand for longer than half an hour. Tr. 424. Ms. Blevins opined that Plaintiff could stand or walk for about 4 hours in an 8-hour day and he would need to shift positions every 15-20 minutes. Tr. 593. Plaintiff testified that he needed to rest and change

position frequently. Tr. 424, 72, 78.  Therefore, the ALJ did not incorporate all of Plaintiff's limitations caused by fibromyalgia.  The ALJ erred in the RFC formulation.

## IV. Vocational Expert's Testimony

While the Court does not need to address the remaining issue whether the ALJ erred by failing to reconcile the vocational expert's opinion with the Dictionary of Occupational Title, the Court finds that the vocational expert's testimony supports the finding of disability.

The vocational expert could not identify any transferable skills to either light or sedentary work for Plaintiff. Tr. 86.  Additionally, the vocational expert testified that, if a person is being off task more than 15 percent, or missing work at least once a week, or needs additional breaks, it would preclude light or sedentary work. Tr. 87.  Both the medical record and Plaintiff's testimony show that Plaintiff suffers from fatigue. Tr. 424, 72.  Plaintiff testified that he has maybe five good days a month where he can be active for about four hours. Tr. 79-81.  Therefore, Plaintiff would be off work more than 15 percent.  According to the vocational expert, this would preclude light or sedentary work. Tr. 87.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379

F.3d 587, 593 (9th Cir. 2004)). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for rejecting Dr. McCord's opinion and Plaintiff's subjective testimony. As to the second prong, Dr. McCord opined that Plaintiff's condition from osteoarthritis and fibromyalgia is permanent and he can no longer perform work as a pipe fitter. Tr. 276-77. Because Plaintiff would be disabled if his testimony were credited, the Court credited Plaintiff's testimony above. Further, the vocational expert's testimony supports the finding of disability. Thus, there are no outstanding issues that must be resolved before a determination of disability can be made. The second prong of the credit-as-true doctrine is satisfied. It is also clear from the record that the ALJ would be required to find Plaintiff disabled, satisfying the third prong.

For the reasons set forth above, the Court remands this case for the immediate calculation and award of benefits.

DATED this <u>29th</u> day of May 2020.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI
United States Magistrate Judge

20 – OPINION AND ORDER